A95A1021. THE STATE v. GERBERT.
A95A1341. THE STATE v. DAMRON.
A95A1342. THE STATE v. KISER.
(467 SE2d 177)

POPE, Presiding Judge.

We consolidated these appeals to consider the trial court's grant of defendants' motions for discharge and acquittal pursuant to OCGA § 17-7-170.

1. The State first argues that the court should have denied the motions for discharge because the demands for speedy trial were filed before the formal accusations were filed. The State contends that the

uniform traffic citations (UTC) against each defendant could not serve as accusations and that even if they could, they were not filed prior to the demands.

### Case No. A95A1021

On June 7, 1994, a citation was issued charging Gerbert with the offense of "DUI Alcohol & Drugs" in violation of OCGA § 40-6-391 (a) (3). The citation was filed in the Rockdale County State Court on June 13, 1994 and ordered Gerbert to appear in state court on July 13, 1994.

On June 24, 1994, Gerbert filed a demand for trial in the state court pursuant to OCGA § 17-7-170. On July 13, 1994, the state court set bond, which Gerbert posted.

On September 27, 1994, the formal accusation against Gerbert was filed, charging him with driving under the influence of drugs, with failure to maintain his lane of travel and with two counts of driving with a prohibited substance. Gerbert entered a plea of not guilty and requested a jury trial on November 16, 1994.

The parties stipulated that the Rockdale County State Court has four three-month terms a year, beginning at the start of January, April, July, and October. They further stipulated that juries were impaneled and qualified to try Gerbert in both the July and October terms. On January 27, 1995, the state court granted Gerbert's motion for discharge and acquittal, determining that because he was not tried on the citation or on the formal accusation during the July and October terms of court, he was acquitted of the charges.

"OCGA § 17-7-170 provides that when a person makes a demand for trial he is entitled to be discharged and acquitted of the offense charged if he is not tried during the term in which his demand for trial is made or at the next succeeding regular term, and there were juries impaneled and qualified to try him at each of those terms." (Citation and punctuation omitted.) *Scott v. State*, 206 Ga. App. 17 (424 SE2d 325) (1992); see *State v. Hicks*, 183 Ga. App. 715, 716 (359 SE2d 712) (1987); *State v. McKenzie*, 184 Ga. App. 191, 192 (361 SE2d 54) (1987); see also *Huff v. State*, 201 Ga. App. 408 (411 SE2d 60) (1991).

The first issue to be resolved is whether Gerbert's filing of his demand for a speedy trial started the clock for the two terms within which to try him. The citation against Gerbert was originally filed in state court and directed Gerbert to appear there. The State argues that the citations were filed in the traffic violations bureau (TVB) of the state court, which could not impanel juries and therefore, had no authority to try Gerbert. Accordingly, the State argues that Gerbert's demand was untimely and the motion to discharge was improperly

granted.

Included in the record is a document regarding the Rockdale County State Court which states that "pursuant to Section 40-13-50, et seq. of the Official Code of Georgia Annotated it is hereby Ordered that a Traffic Violations Bureau be established as a division of the State Court of Rockdale County for the handling and disposition of all traffic cases which are not excepted by law or by order." OCGA § 40-13-53 (b) (1) provides that any offense for which a driver's license may be suspended by the commissioner of public safety shall not be handled or disposed of by a traffic violations bureau. OCGA § 40-5-67 provides that upon conviction for a violation of OCGA § 40-6-391, a person's driver's license shall be forwarded to the Department of Public Safety. Thus, it appears that the TVB could not handle or dispose of the violations at issue in these cases.

In light of these provisions, jurisdiction of the charge against Gerbert for driving under the influence was properly in the state court, not in the traffic bureau division. In granting the motion for discharge, the court concluded that the citation was properly filed and that Gerbert's demand was not premature on this basis. The court stated that it did not suggest that a speedy trial demand "filed upon a UTC within the jurisdiction of the [TVB] would be timely filed." The court stated further: "[n]or does the court suggest that such a speedy trial demand filed on TVB case which is transferred to the Solicitor's office by the Clerk would be timely until a formal accusation had been filed."[1] Given that Gerbert's demand for speedy trial was filed in a court which could impanel juries to try him, we now must determine in this case and in Case Nos. A95A1341 and A95A1342 whether the motion to discharge was properly granted.

It is settled that a UTC may serve as an accusation. "As provided in OCGA § 40-13-1, a uniform traffic citation shall serve as the citation, summons, accusation, or other instrument of prosecution of the offense or offenses for which the accused is charged." (Citation and punctuation omitted.) *State v. Black*, 213 Ga. App. 331 (444 SE2d 368) (1994); OCGA § 17-7-71 (b) (1). On the other hand, "[i]t is not true that a prosecution *must* proceed upon the uniform traffic citation form that has initially been issued or that the prosecuting attorney has no authority to file a subsequent [formal] accusation." (Citations and punctuation omitted; emphasis supplied.) *Ellerbee v. State*, 215 Ga. App. 102, 104 (3) (449 SE2d 874) (1994).

---

[1] The traffic bureau division of the Rockdale County State Court does not hold jury trials. In its order, the court appears to be concerned with the effect of a speedy trial demand made on an offense originally filed in the traffic bureau. Because in Rockdale County the TVB operates only as a division of the state court, the emphasis on this distinction appears irrelevant.

In the instant matter, the citation charged Gerbert with driving under the influence, while the accusation charged him with the additional offenses of failing to maintain the lane of travel and of driving with a prohibited substance. Thus, the "accusation *superseded* [the] uniform traffic citation as the charging instrument." (Emphasis supplied.) *Ellerbee v. State*, 215 Ga. App. at 104. Although the driving under the influence charge was contained in the UTC, we conclude that for purposes of speedy trial demands the offenses charged in the citation and those of the accusation will be viewed as a whole. In our effort to avoid piecemeal litigation, we will not separately parcel out each offense.

Because the citation against Gerbert did not serve as the accusation, the demand for trial was premature and the motion for discharge was improperly granted. See *Groom v. State*, 212 Ga. App. 133 (441 SE2d 259) (1994). "There is no provision in Georgia law whereby a prematurely filed speedy trial demand can be resuscitated by a later returned accusation (or indictment) whether they are filed in the same term or not." *State v. McKenzie*, 184 Ga. App. at 192; *State v. Frazier*, 201 Ga. App. 6 (1) (410 SE2d 134) (1991). Accordingly, the grant of Gerbert's motion to discharge on this basis is reversed.[2]

### Case No. A95A1341

Citations issued on April 20, 1994, charging Damron with driving under the influence of alcohol, an open container violation, and reckless driving. Damron was ordered to appear in state court. The parties stipulated that the citations were delivered to the court clerk by the sheriff's department with a list of the other UTCs on April 22, 1994. The stipulation further provided that the clerk entered information regarding the UTCs into a computer on April 25, 1994.

On May 16, 1994, Damron filed his trial demand under OCGA § 17-7-170. On July 28, 1994, an accusation was filed, charging Damron with driving under the influence of alcohol, an open container violation, and reckless driving.

The parties stipulated that the Rockdale County State Court had four three-month terms a year and that juries were impaneled and qualified to try Damron in the April, July, and October terms. On February 20, 1995, the court granted Damron's motion to discharge and acquit.

"In this case, the uniform traffic citations served as the accusations. [Cits.] Although formal accusations were later filed in this case, they were superfluous. [Cits.]" *Smith v. State*, 207 Ga. App. 762 (429

---

[2] Although the court granted Gerbert's motion to suppress the results of the State-administered blood test, this ruling is not at issue here.

SE2d 149) (1993); compare *State v. Lipsky,* 191 Ga. App. 842 (383 SE2d 204) (1989). The citation was filed with the state court prior to the filing of the demand for speedy trial and the motion for discharge and acquittal was properly granted.

### Case No. A95A1342

On May 20, 1994, a citation issued against Kiser charging him with "DUI Alcohol & Drugs in violation of Code Section 40-6-391 (a) (3)." He was ordered to appear in state court. The parties stipulated that the citations were delivered to the court clerk by the sheriff's department with a list of other UTCs on June 3, 1994, and were entered into the court computer on June 6, 1994.

On June 9, 1994, Kiser filed a demand for trial pursuant to OCGA § 17-7-170. On December 9, 1994, an accusation against Kiser was filed which charged him with four counts of driving under the influence of alcohol and drugs; the counts corresponded to the four subsections of OCGA § 40-6-391 (a).

Again, the parties stipulated that the Rockdale County State Court had four three-month terms a year and that juries were impaneled and qualified to try Kiser in the April, July, and October terms. On February 20, 1995, the court granted Kiser's motion to discharge and acquit.

Although the accusation contained charges under OCGA § 40-6-391 (a) in addition to the charge contained in the UTC, this fact is not dispositive. As stipulated by the parties, the charges against Kiser were filed in June, which is during the April term of court. Kiser filed his demand for speedy trial in June, which is also part of the April term. The State did not file the accusation against Kiser until December, which is part of the October term.

"OCGA § 17-7-170 provides that when a person makes a demand for trial he is entitled to be discharged and acquitted of the offense charged if he is not tried during the term in which his demand for trial is made or at the next succeeding regular term, and there were juries impaneled and qualified to try him at each of those terms." (Citation and punctuation omitted.) *Scott v. State,* 206 Ga. App. at 17. In this case, it was necessary that Kiser be tried in either the April or July term. Because Kiser was not tried during either of these terms, the court properly granted his motion for discharge and acquittal. This result was not altered by the filing of the accusation in December, after the two terms had expired.

These cases illustrate the procedural quagmire that may result in cases of this type. In an effort to ameliorate this situation, and to provide a fair procedure for both the State and the accused, in future cases in which a speedy trial demand is filed on a UTC, the State will

be required to elect, within the first term during which the case could be tried, whether to proceed on the UTC or whether, instead, to file an accusation which will then supplant the UTC as the charging instrument. This requirement does not conflict with OCGA § 17-7-71 (f), since that subsection deals with the amendment of accusations which have already been filed and does not apply to UTCs. See *State v. Rustin*, 208 Ga. App. 431, 434 (2) (430 SE2d 765) (1993); see also *Ellerbee v. State*, 215 Ga. App. at 104. This requirement will be effective to all cases in which the UTC is filed after this opinion appears in the advance sheets.

2. Because the first enumeration of error does not end our inquiry as to Case Nos. A95A1341 and A95A1342, we address the State's additional arguments. Contrary to the State's second enumeration, service of the demands for trial was properly made on the solicitor and district attorney, rather than the officer who issued the citations. See OCGA § 17-1-1 (b).

3. The State next points to difficulties in trying the case on the UTC instead of on a formal accusation. At the outset, we note that our holding in Division 1 renders this issue moot. Moreover, "it is not true that a prosecution must proceed upon the [UTC] form that has initially been issued and that the prosecuting attorney has no authority to file a subsequent formal accusation. The State is not prohibited from issuing a subsequent accusation." (Citation and punctuation omitted.) *State v. Doyal*, 184 Ga. App. 126, 127 (361 SE2d 17) (1987).

4. The State argues that since the defendants' original demands for trial referenced the citation numbers, and the motions to discharge referenced the case numbers, the motions should have been dismissed. However, the charges at issue are identifiable in the demands and motions, and this argument is specious.

5. We have examined the State's fifth enumeration of error, that the OCGA § 17-7-170 demands were insufficient on their face, and find it without merit. See *Verscharen v. State*, 188 Ga. App. 746, 747 (374 SE2d 349) (1988).

6. Finally, the State argues that there is no conflict between OCGA § 40-13-3 and Section 8 of the local statute creating the State Court of Rockdale County. Section 8 of that local statute states that "[a]ll prosecutions in criminal cases instituted in the State Court of Rockdale County shall be by written accusation made by the solicitor. . . ." As discussed in Division 1 above, OCGA § 40-13-1 et seq. allow the citation to serve as the accusation. Accordingly, the state court properly determined that the provisions were in conflict and that OCGA § 40-13-1 et seq. controlled. See Ga. Const. 1983, Art. III, Sec. VI, Par. IV (a); OCGA § 15-7-3; see generally *Majia v. State*, 174 Ga. App. 432, 433 (2) (330 SE2d 171), aff'd 254 Ga. 660 (333 SE2d 834) (1985).

*Judgment reversed in Case No. A95A1021. McMurray, P. J., Birdsong, P. J., Andrews, Johnson, Blackburn, Smith and Ruffin, JJ., concur. Beasley, C. J., concurs in part and dissents in part. Judgments affirmed in Case Nos. A95A1341 and A95A1342. McMurray, P. J., Birdsong, P. J., Andrews, Johnson, Blackburn, Smith and Ruffin, JJ., concur. Beasley, C. J., concurs specially.*

BEASLEY, Chief Judge, concurring in part and dissenting in part.

I respectfully dissent with respect to the affirmance of Gerbert's conviction and specially concur with respect to affirmance of the discharges and acquittals granted to Damron and Kiser. I concur fully in Divisions 2 through 6 of the majority opinion but not in Division 1.

Judicially compelled cessation of prosecution of a criminal offense is an "extreme sanction" for the State's tardiness in proceeding. *Ferris v. State*, 172 Ga. App. 729, 731 (1) (324 SE2d 762) (1984). It is what the law requires when the defendant has properly filed a demand for speedy trial. OCGA § 17-7-170 (b). It is not discretionary; the statute commands "shall." Due to its severity, the one who calls for it must file with the court a clear "demand to be tried within the next succeeding term of court," *Ferris*, supra at 730, and must alert the prosecutor by service of a copy of the demand, as the statute requires.

The sanction is a fatal one because it guards a valuable right, the right to have charges brought against one disposed of not only while witnesses are available and their memories are fresh but also so that the deleterious effects of a pending charge on a defendant are lessened. As stated in *Hubbard v. State*, 254 Ga. 694, 695 (333 SE2d 827) (1985), "In the absence of a right to a speedy trial the accused might suffer uncertainty, emotional stress, and the economic strain of a pending prosecution indefinitely."

The process of criminal proceedings is not meant to be the punishment. The right is regarded as so fundamental that it is protected not only by statute, OCGA § 17-7-170 (a), but also by both the State constitution, Ga. Const., Art. I, Sec. I, Par. XI (a), and the federal constitution, Amendment Six. As stated in these three documents respectively, the right belongs to "[a]ny person against whom a true bill of indictment or an accusation is filed," "the defendant," "the accused."

When may a person who is charged with a misdemeanor by a uniform traffic citation and complaint exercise that right? A person can be tried on a UTC for certain misdemeanors, including the ones charged originally against the defendants in the instant cases. OCGA § 17-7-71 (b). The citation and complaint has significant attributes similar to those of an accusation or indictment. It serves "as the citation, summons, accusation, or other instrument of prosecution of the

offense or offenses for which the accused is charged, and as the record of the disposition of the matter by the court before which the accused is brought. . . ." OCGA § 40-13-1. It "contains an accusation." *Duncan v. State*, 193 Ga. App. 793, 794 (389 SE2d 365) (1989). It serves as authority for the requirement of bond in lieu of loss of liberty. OCGA § 40-13-55. It authorizes a command to appear in court on a date certain, to answer the charge. OCGA § 40-13-58. It "alone suffice[s] to prosecute the traffic violation." *Weaver v. State*, 179 Ga. App. 641 (1) (347 SE2d 295) (1986); OCGA § 40-13-3.

Of particular significance is that the issuance and filing of a UTC "commences" the prosecution of the charge contained therein, for statute of limitation purposes. *Poppell v. State*, 209 Ga. App. 91, 92 (432 SE2d 573) (1993); *Duncan*, supra; *Weaver*, supra. OCGA § 17-3-1 (d) provides that "Prosecution for misdemeanors must be commenced within two years after the commission of the crime." The decision to prefer an accusation and add a charge is not subject to a statute of limitation defense on the original charges if the period expires between the date the UTC is filed and the date the accusation is filed. *Duncan*, supra. The defendant's right to rely on the earlier date for trial demand purposes must be commensurate with the State's right to rely on that date for statute of limitation purposes. Since defendants are just as much at risk on a UTC as they are on an accusation or indictment for the offense charged, the right to demand a speedy trial must attach at the time the UTC is filed with the court. *State v. Lipsky*, 191 Ga. App. 842 (383 SE2d 204) (1989).

Whether to proceed on the UTC, or on a prosecutor's accusation, or on a grand jury indictment, is the choice of the prosecutor. The State's advocate should not have control of when the defendant's right to a speedy trial on the charge contained in the UTC arises. That is the result of the majority's holding, which is contrary to the statutory commands. The service of a copy of the demand on the prosecutor is "sufficient to put the authorities on notice of [the] defendant's intention to invoke the extreme sanction" of OCGA § 17-7-170. *Ferris*, supra at 731 (1). Whether the prosecutor decides to add more charges based on the evidence is solely within his or her discretion, but this cannot frustrate the invocation of the defendant's right.

For these reasons, the trial court should be affirmed in all three cases.

DECIDED DECEMBER 20, 1995 — 

*Michael M. Hawkins, Solicitor*, for appellant.
*Albert A. Myers III*, for appellee (case no. A95A1021).

*Terry N. Massey*, for appellees (case nos. A95A1341, A95A1342).